**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HECTOR AVEVEDO and JUANITA BERMUDEZ, | ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | 11 C 4877 |
| CITIMORTGAGE, INC., | ) ) | |
|     Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs Hector Avevedo and Juanita Bermudez contend that defendant CitiMortage failed to honor its written agreement to modify their mortgage and stop foreclosure on their home pursuant to the federal government's Home Affordable Modification Program ("HAMP"). Specifically, the plaintiffs claim that CitiMortgage either breached a HAMP Trial Period Plan agreement ("TPP") to modify their mortgage or defrauded them with a false promise of a HAMP loan modification to induce them to make additional mortgage payments when they could have been directing those funds to other means of saving their home. The plaintiffs filed a five-count complaint alleging breach of contract based on the TPP (Count I), breach of the duty of good faith and fair dealing associated with the TPP (Count II), promissory estoppel (Count III), a violation of the Illinois Consumer Fraud Act, 815 ILCS § 505/2 (Count IV), and a claim of "wrongful foreclosure" (Count V). CitiMortgage seeks to dismiss the complaint in its entirety. For the following reasons, the breach of contract claim is dismissed and the court orders further briefing on the remaining counts as detailed below.

**I.      Background**

For the purposes of the motion to dismiss, the facts in the complaint are accepted as true. The plaintiffs experienced financial hardships in early 2009 which made it challenging to afford payments on a loan secured by a mortgage on their home in Chicago. They contacted CitiMortgage, the mortgagee on the property, by phone to request assistance under HAMP. CitiMortgage sent the plaintiffs a letter dated December 14, 2009, with a TTP based on the information the plaintiffs had provided during their telephone call. *See* Complaint, Ex. A, Dkt. 2-1. The letter urged the plaintiffs to "act now!" and asked them to "accept this offer and see if you qualify for a Home Affordable Modication." *Id*. It also asked the plaintiffs "to submit specified documents and information, the TPP signed by them, and the first TTP payment by January 1, 2010, and to make timely monthly trial payments." *Id*.

The TTP advised the plaintiffs that CitiMortgage would either send a signed copy of the TTP to them if they qualified for the offer described in the TTP or provide a written notice if they did not qualify. *Id*. Specifically, it provided that, "[t]his [TTP] will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature." *Id*. In addition, it provided that:

> F.      If prior to the Modification Effective Date, (I) the Lender does not provide me with a fully executed copy of this Plan and the Modification Agreement . . . ; or (iv) I do not provide all information and documents required by Lender, the Loan Documents will not be modified and this Plan will terminate.
>
> G.      I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (I) I meet all of the conditions required for modification . . . . I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or I fail to meet any one of the requirements under this Plan.

*Id*.

On August 17, 2010, CitiMortgage advised the plaintiffs that it declined to approve their modification request because they had not provided all of the required documents. The plaintiffs allege that they provided all of the necessary documents but concede that they provided additional documentation to CitiMortgage during the review process that followed the rejection. They characterize the request for further documents as unfair and contend that they repeatedly provided all of the necessary documents to CitiMortgage. They also allege that they made all payments required by the TTP in full and on time.

After the trial period ended and CitiMortgage did not convert the plaintiffs' TTP into a permanent loan modification, CitiMortgage continued to debit the monthly TTP payment from the plaintiffs' bank account for the next five months. Despite acknowledging that they received CitiMortgage's August 17, 2010, letter (Complaint at ¶ 67), the plaintiffs allege that they never received a written explanation of the denial or any notice that they were purportedly missing documents (Complaint at ¶¶ 67-68, 71-75).

The plaintiffs submitted a second HAMP application. They contend that CitiMortgage told them it was complete but nevertheless sent them a request for more documents which, according to the plaintiffs, CitiMortgage already had. On February 3, 2011, CitiMortgage sold the plaintiffs' home.

## II. Discussion

### A. Standard for a Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss, a complaint's request for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic v. Twombly*, 550

U.S. 544, 570 (2007). A complaint meets this standard when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[N]aked assertions devoid of further factual enhancement" are insufficient. *Id*. at 1949 (internal quotation marks omitted). Determining if a complaint states a plausible claim is "a context-specific task that requires [the court] to draw on [its] judicial experience and common sense." *Id*. at 1950.

### B. The Plaintiffs' Claims

CitiMortgage argues that the entire complaint must be dismissed because: (1) HAMP does not give a borrower a private right of action against a lender; and (2) the plaintiffs failed to allege that they incurred recoverable damages. Alternatively, it contends that Count I for breach of contract fails because the TTP did not create an enforceable contract. According to CitiMortgage, if Count I is dismissed, the other counts also must be dismissed because they cannot stand without a contractual promise by CitiMortgage to modify the plaintiffs' loan.

In the event that the court rejects its other global arguments, CitiMortgage attacks the remaining counts by arguing that: (1) Count II, based on an alleged breach of the duty of good faith and fair dealing, should be dismissed because there is no contract from which the duty of good faith and fair dealing can be implied; (2) the plaintiffs cannot seek relief based on a promissory estoppel theory (Count III) because the plaintiffs do not allege facts showing that CitiMortgage made an unambiguous promise that the plaintiffs relied upon to their detriment; (3) Count IV, based on the Illinois Consumer Fraud and Deceptive Trade Practices Act ("CFA"), fails because CitiMortgage's conduct under HAMP cannot support a claim under the CFA and, alternatively, because the plaintiffs did not allege facts showing that CitiMortgage committed

-4-

unfair or deceptive acts or intended for the plaintiffs to rely on any alleged deception; and (4) Count V for wrongful foreclosure fails to allege facts showing that CitiMortgage wrongfully foreclosed on the mortgage on the plaintiffs' home.

The court begins by addressing the impact on this action of a recent Seventh Circuit case addressing similar claims: *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). The parties were afforded an opportunity to weigh in on *Wigod* and unsurprisingly offer competing interpretations. In *Wigod*, plaintiff Lori Wigod sued Wells Fargo, her home mortgage loan servicer, after it refused to modify her loan under HAMP. Her suit was based on Wells Fargo's issuance of a four-month TTP, under which it agreed to permanently modify her loan if she qualified under HAMP guidelines. Ms. Wigod's TTP stated, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the [permanent modification] Offer or will send me written notice that I do not qualify for the Offer." *Id*. at 558.

Ms. Wigod sent Wells Fargo two signed copies of the TTP, along with additional documents and her first payment. In response, Wells Fargo signed the TTP and returned it to Ms. Wigod. The TTP signed by both parties stated, "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a [permanent] Loan Modification." *Id*. Ms. Wigod alleged that she qualified and did everything she was supposed to do but Wells Fargo nevertheless refused to modify her loan, contending that it believed that "it could not craft a modification plan for her that would be consistent with its investor guidelines." *Id.*

Turning back to the case presently before the court, CitiMortgage contends that the plaintiffs' situation differs from Ms. Wigod's in two critical respects: (1) Ms. Wigod's lender issued a TTP *after* it verified her financial information and (2) her lender executed the TTP and thus agreed that Ms. Wigod would receive a modification if she complied with the terms of the TTP. In contrast, as CitiMortgage notes, the TTP in the instant case was issued before CitiMortgage verified the plaintiffs' financial information and CitiMortgage never signed the plaintiffs' TTP.

The plaintiffs in the instant case assert that "[a]s *Wigod* plainly holds, a borrower can state a claim for breach of contract where a lender has entered into a TTP with him or her and failed to comply with its terms." Plaintiffs' Memorandum Addressing *Wigod* at 1, Dkt. 39, PageID#729. So, what does it mean to "enter into" a TTP?

The plaintiffs' TTP stated that CitiMortgage would either send a signed copy of the TTP to them if they qualified for the modification offer described in the TTP or tell them they did not qualify in writing. As noted above, the TTP explicitly provided that "[t]his [TTP] will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature" and "[i]f prior to the Modification Effective Date, (I) the Lender does not provide me with a fully executed copy of this Plan and the Modification Agreement . . . . the Loan Documents will not be modified and this Plan will terminate." CitiMortgage contends that it conditioned the formation of a binding contract on its execution and return of the TTP to the plaintiffs. Because it never executed or returned the TTP, CitiMortgage reasons that no binding contract existed. It thus concludes that the plaintiffs cannot base a breach of contract claim on a non-existent contract.

The Seventh Circuit confronted a similar argument in *Wigod*, and its analysis of the issue is worth quoting in full:

> In Illinois, the "test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir.2002), *quoting McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 44 Ill.Dec. 570, 411 N.E.2d 936, 943 (1980); *see also* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). To determine whether the TPP made a definite (though conditional) offer of permanent modification, we examine the language of the agreement itself and the surrounding circumstances. *See* Restatement (Second) of Contracts § 26, cmts. *a & c* (1981), citing *R.E. Crummer & Co. v. Nuveen,* 147 F.2d 3, 5 (7th Cir. 1945).
>
> Wells Fargo contends that the TPP was not an enforceable offer to permanently modify Wigod's mortgage because it was conditioned on Wells Fargo's further review of her financial information to ensure she qualified under HAMP. Under contract law principles, when "some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer." 1 Joseph M. Perillo, *Corbin on Contracts* § 1.11, at 31 (rev. ed. 1993) (hereinafter "*Corbin on Contracts* (rev. ed.)"), *citing Bank of Benton v. Cogdill,* 118 Ill.App.3d 280, 73 Ill.Dec. 871, 454 N.E.2d 1120, 1125–26 (1983). Thus, "a person can prevent his submission from being treated as an offer by [using] suitable language conditioning the formation of a contract on some further step, such as approval by corporate headquarters." *Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.,* 58 F.3d 1227, 1230 (7th Cir. 1995) (Illinois law). Wells Fargo contends that the TPP did just that by making a permanent modification expressly contingent on the bank taking some later action.
>
> That is not a reasonable reading of the TPP. Certainly, when the promisor conditions a promise on *his own* future action or approval, there is no binding offer. But when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer. *See* 1 Richard A. Lord, *Williston on Contracts* § 4:27 (4th ed. 2011) (hereinafter "*Williston on Contracts*") ("[A] condition of subsequent approval by the promisor in the promisor's sole discretion gives rise to no obligation.... However, the mere fact that an offer or agreement is subject to events not within the promisor's control ... will not render the agreement illusory."); Compare *McCarty,* 44 Ill.Dec. 570, 411 N.E.2d at 942 ("An offer is an act on the part of one person giving another person the legal power of creating the obligation called a contract."), with *Village of South Elgin v. Waste Management of Illinois, Inc.,* 348 Ill.App.3d 929, 284 Ill.Dec. 868, 810 N.E.2d 658, 672 (2004) ("A manifestation of willingness to enter into a bargain is

not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."), *quoting* Restatement (Second) of Contracts § 26 (1981).

Here the TPP spelled out two conditions precedent to Wells Fargo's obligation to offer a permanent modification: Wigod had to comply with the requirements of the trial plan, and her financial information had to remain true and accurate. But these were conditions to be satisfied by the promisee (Wigod) rather than conditions requiring further manifestation of assent by the promisor (Wells Fargo). These conditions were therefore consistent with treating the TPP as an offer for permanent modification.

Wells Fargo insists that its obligation to modify Wigod's mortgage was also contingent on its determination, after the trial period began, that she qualified under HAMP guidelines. That theory conflicts with the plain terms of the TPP. At the beginning, when Wigod received the unsigned TPP, she had to furnish Wells Fargo with "documents to permit verification of ... [her] income ... to determine whether [she] qualif[ied] for the offer." TPP ¶ 2. The TPP then provided: "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan *if I qualify for the Offer* or will send me written notice that I do not qualify for the offer." TPP ¶ 2 (emphasis added). Wigod signed two copies of the Plan on May 29, 2009, and returned them along with additional financial documentation to Wells Fargo.

Under the terms of the TPP Agreement, then, that moment was Wells Fargo's opportunity to determine whether Wigod qualified. If she did not, it could have and should have denied her a modification on that basis. Instead, Wells Fargo countersigned on June 4, 2009 and mailed a copy to Wigod with a letter congratulating her on her approval for a trial modification. In so doing, Wells Fargo communicated to Wigod that she qualified for HAMP and would receive a permanent "Loan Modification Agreement" after the trial period, provided she was "in compliance with this Loan Trial Period and [her] representations ... continue[d] to be true in all material respects." TPP ¶ 1.

In more abstract terms, then, when Wells Fargo executed the TPP, its terms included a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain. "The test for an offer is whether it induces a reasonable belief in the [offeree] that he can, by accepting, bind the [offeror]." *Architectural Metal Systems,* 58 F.3d at 1229, citing *McCarty,* 44 Ill.Dec. 570, 411 N.E.2d at 943; *see also* 1 *Williston on Contracts* § 4.10 (offer existed if the purported offeree "reasonably [could] have supposed that by acting in accordance with it a contract could be concluded"). Here a reasonable person in Wigod's position would read the TPP as a definite offer to provide a permanent

modification that she could accept so long as she satisfied the conditions.

This is so notwithstanding the qualifying language in section 2 of the TPP. An acknowledgment in that section provided: "I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of the Modification Agreement, and (iii) the Modification Effective Date has passed." TPP § 2.G... According to Wells Fargo, this provision meant that all of its obligations to Wigod terminated if Wells Fargo itself chose not to deliver "a fully executed TPP *and* 'Modification Agreement' by November 1, 2009." In other words, Wells Fargo argues that its obligation to send Wigod a permanent Modification Agreement was triggered only if and when it actually sent Wigod a Modification Agreement.

Wells Fargo's proposed reading of section 2 would nullify other express provisions of the TPP Agreement. Specifically, it would nullify Wells Fargo's obligation to "send [Wigod] a Modification Agreement" if she "compl[ied] with the requirements" of the TPP and if her "representations ... continue to be true in all material respects." TPP § 3. Under Wells Fargo's theory, it could simply refuse to send the Modification Agreement for any reason whatsoever—interest rates went up, the economy soured, it just didn't like Wigod—and there would still be no breach. Under this reading, a borrower who did all the TPP required of her would be entitled to a permanent modification only when the bank exercised its unbridled discretion to put a Modification Agreement in the mail. In short, Wells Fargo's interpretation of the qualifying language in section 2 turns an otherwise straightforward offer into an illusion.

The more natural interpretation is to read the provision as saying that no permanent modification *existed* "unless and until" Wigod (i) met all conditions, (ii) Wells Fargo executed the Modification Agreement, and (iii) the effective modification date passed. Before these conditions were met, the loan documents remained unmodified and in force, but under paragraph 1 and section 3 of the TPP, Wells Fargo still had an obligation to *offer* Wigod a permanent modification once she satisfied all her obligations under the agreement. This interpretation follows from the plain and ordinary meaning of the contract language stating that "the Plan is not a modification ... unless and until" the conditions precedent were fulfilled. TPP § 2.G. And, unlike Wells Fargo's reading, it gives full effect to all of the TPP's provisions. *See McHenry Savings Bank v. Autoworks of Wauconda, Inc.,* 399 Ill.App.3d 104, 338 Ill.Dec. 671, 924 N.E.2d 1197, 1205 (2010) ("If possible we must interpret a contract in a manner that gives effect to all of the contract's provisions."), citing *Bank of America Nat'l Trust & Savings Ass'n v. Schulson,* 305 Ill.App.3d 941, 239 Ill.Dec. 462, 714 N.E.2d 20, 24 (1999). Once Wells Fargo signed the TPP Agreement and returned it to Wigod, an objectively reasonable person would construe it as an offer to provide a permanent

modification agreement if she fulfilled its conditions.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d at 561-63 (emphasis in original).

Thus, in *Wigod*, the only conditions precedent to the lender's obligation to offer a permanent modification fell upon the borrower, who had to comply with the requirements of the trial plan and maintain her financial condition. Because these conditions were solely the borrower's responsibility, the Seventh Circuit held that the *Wigod* TPP was an offer for permanent modification. *Id.* at 561 ("Certainly, when the promisor [the lender] conditions a promise on *his own* future action or approval, there is no binding offer. But when the promise is conditioned on the performance of some act *by the promisee* or a third party [the borrower], there can be a valid offer") (emphasis in original).

The court agrees with CitiMortgage that the fact that it did not execute the TTP associated with the plaintiffs' loan and return that document to them is fatal to the plaintiffs' breach of contract claim. The plaintiffs' ability to secure a loan modification was premised, among other things, on CitiMortgage's execution of the TTP. The offer to modify the plaintiffs' loan was, therefore, not binding unless and until CitiMortgage executed the TTP and returned it to the plaintiffs. This never happened. Thus, CitiMortgage was not required to modify the plaintiffs' loan, assuming that the plaintiffs held up their end of the bargain. *See id.* at 563 ("Once Wells Fargo signed the TPP Agreement and returned it to Wigod, an objectively reasonable person would construe it as an offer to provide a permanent modification agreement if she fulfilled its conditions").

The court adheres to this conclusion despite the plaintiffs' argument that the loan modification was not contingent on CitiMortgage's return of the executed TTP. Plaintiffs'

Memorandum Addressing *Wigod* at 2, Dkt. 39, PageID#730. For the reasons set forth above, a careful reading of the Seventh Circuit's opinion in *Wigod* shows that the court did, in fact, hold that the lender needed to execute the TTP for it to become binding upon the lender. The court acknowledges that a split of authority exists regarding this aspect of *Wigod*. *See, e.g., Sutcliffe v. Wells Fargo Bank, N.A.*, C-11-06595 JCS, 2012 WL 1622665 (N.D. Cal. May 9, 2012) (implying that *Wigod* held that the lender was bound even though it did not return an executed TTP, noting that "[t]he question of whether the TPP that was sent to Plaintiffs created an enforceable contract for a permanent loan modification is the subject of extensive litigation in multiple jurisdictions" and collecting cases on both sides of the debate); *cf. Brady v. Chase Home Fin., LLC*, 1:11-CV-838, 2012 WL 1900606, at *6 (W.D. Mich. May 24, 2012), *quoting Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d at 563 ("This Court finds the Seventh Circuit's analysis [in *Wigod*] both reasonable and persuasive. That is, because the TPP warns the recipient that it 'will not take effect unless and until both [the borrower] and the Lender sign it and Lender provides [the borrower] with a copy of this Plan with the Lender's signature,' no offer is extended until the lender provides the borrower a copy with the lender's signature. By providing an executed copy to the borrower, the lender extends an offer and must provide a modification if the borrower complies with her obligations. Conversely, no offer exists if the lender fails to provide the borrower a signed copy"); *see also Soin v. Fed. Nat. Mortg. Ass'n*, CIV. 2:12-634 WBS, 2012 WL 1232324, at *3-4 (E.D. Cal. Apr. 12, 2012) (collecting cases holding that the lender's decision not to execute the TTP meant that it was not required to extend a loan modification, despite the plaintiffs' submission of documents and trial payments).

The court also acknowledges the plaintiffs' policy arguments in this case. The plaintiffs take issue with the fact that CitiMortgage accepted eight TTP payments and then purportedly pulled the rug out from under them by declining to modify their loan. Plaintiffs' Memorandum Addressing *Wigod* at 3, Dkt. 39, PageID#731. They also contend that CitiMortgage's decision not to modify their loan "smacks of the same unfettered discretion of which the Seventh Circuit was wary" in *Wigod*. *See id*. This court, however, is bound by its reading of the Seventh Circuit's opinion. It believes that its interpretation of the language used in the *Wigod* opinion is correct. Accordingly, the plaintiffs' breach of contract claim must be dismissed.

The court commends all counsel for their thoughtful and well written submissions regarding this issue. The court does not wish to unnecessarily multiply the proceedings, but believes that it would be helpful for the parties to file further submissions regarding the impact of the demise of the breach of contract claim on the other claims. This is especially true given that most of the parties' submissions predate the issuance of the Seventh Circuit's decision in *Wigod*. Therefore, the parties shall, by August 10, 2012, file a joint position paper summarizing their respective positions.

## III.     Conclusion

CitiMortgage's motion to dismiss [Dkt. 14] is granted as to the plaintiffs' breach of contract claim and denied without prejudice as to the remaining claims. By August 10, 2012, the parties shall file a joint position paper summarizing their respective positions.


DATE: July 25, 2012

_____
Blanche M. Manning
United States District Judge