IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HECTOR ACEVEDO and )
JUANITA BERMUDEZ, )
 )
      Plaintiffs, ) No. 11 C 4877
 )
v. ) Judge Robert W. Gettleman
 )
CITIMORTGAGE, INC., )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Hector Acevedo and Juanita Bermudez sued defendant CitiMortgage, Inc. after their attempts to obtain a mortgage modification and stave off foreclosure proceedings failed. Defendant moved to dismiss all of the plaintiffs' claims. Judge Blanche Manning, who presided over the case prior to her retirement, granted defendant's motion to dismiss the breach of contract claim (Count I). She did not rule on the sufficiency of the remaining four claims pending further briefing. For the reasons discussed below, the motion to dismiss the remaining claims is granted in part and denied in part.

## **FACTS**[1]

Hector Acevedo and his grandmother, Juanita Bermudez, own a home in Chicago. In 2009, they experienced financial hardships. They phoned the servicer of their mortgage, defendant CitiMortgage, to request a loan modification under the federal government's Home Affordable Modification Program. Defendant responded by sending plaintiffs a letter dated

---

[1] The facts are taken from plaintiffs' complaint and are accepted as true for purposes of the instant motion. McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 879 (7th Cir. 2012).

December 14, 2009, urging them to "act now!" by signing and returning a document referred to as a Trial Period Plan. According to the Trial Period Plan, plaintiffs were required to provide documents verifying their income, and make three monthly payments towards their mortgage. If they did so and their representations about their income and home remained accurate, "then the Lender will provide me with a Home Affordable Modification Agreement."

However, the Trial Period Plan plaintiffs received had not yet been signed by defendant. According to the Trial Period Plan, plaintiffs were required to sign the plan first and return it to defendant, which would then either sign the copy and return it to plaintiffs, or provide written notice that plaintiffs did not qualify for a modification. The Trial Period Plan advised plaintiffs that it "will not take effect unless and until both I [plaintiffs] and the Lender [defendant] sign it and Lender provides me with a copy of this Plan with the Lender's signature."

Plaintiffs signed and returned the Trial Period Plan and made the three required payments through automatic debits. But they never received a copy of the Trial Period Plan signed by defendant. Plaintiffs called defendant several times and were told their request for a modification was still under review because of a problem with a document that would need to be resubmitted. Plaintiffs resubmitted the requested document and defendant continued automatically debiting their monthly payments for an additional five months. Defendant eventually sent plaintiffs a letter dated August 17, 2010, stating that their application for a permanent modification was denied due to insufficient information.

Plaintiffs submitted a second application for a modification on January 13, 2011. On January 24 and 28, 2011, defendant told plaintiffs that the application was under review and no additional documents were needed. On January 29, 2011, plaintiffs received a letter from

defendant requesting additional information and documents. The request was for information and documents plaintiffs had already submitted. Just four days after requesting the additional information and documents, defendant sold plaintiffs' home on February 3, 2011.

Plaintiffs sued defendant alleging four claims. In Count I, they allege that defendant breached the terms of the Trial Period Plan by failing to offer a permanent modification after they had complied with all of the plan's terms. In Count II, they allege that defendant breached a duty it owed them under the note, the mortgage, and the Trial Period Plan to act in good faith and fair dealing.[2] In Count III, they allege a claim of promissory estoppel based on the representations in the Trial Period Plan that they would receive a permanent modification if they complied with the plan's terms. In Count IV, they allege unfair and deceptive practices by defendant in violation of the Illinois Consumer Fraud Act. In Count V, they allege a claim of wrongful foreclosure.

In her order dated July 25, 2012 (Doc. 44), Judge Manning dismissed Count I because defendant never returned a signed copy of the Trial Period Plan to plaintiffs. Consequently, there was no contract. Judge Manning declined to address the sufficiency of the remaining allegations. Instead, she directed the parties to file a joint position paper on whether the remaining claims were impacted by the Seventh Circuit's recently-released decision in Wigod v. Wells Fargo Bank, 673 F.3d 547 (7th Cir. 2012). In Wigod, the Seventh Circuit held that even

---

[2]Plaintiffs also alleged that defendant violated the duty of good faith and fair dealing it owed them under the Servicer Participation Agreement it entered into with the federal government to participate in the HAMP program. But plaintiffs have abandoned that claim because they were not a party to the Servicer Participation Agreement.

though HAMP contained no private right of action, mortgagors could pursue state law claims against mortagees for failing to offer permanent modifications. See id. at 581-85.

The parties filed the requested joint position paper. The court now addresses the remaining claims.

**LEGAL STANDARD**

Defendant moves to dismiss Count II through V under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of such a motion is to test the sufficiency of the complaint, not to rule on its merits. McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 879 n.4 (7th Cir. 2012). When considering the motion, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Scherr v. Marriott Intern., Inc., 703 F.3d 1069, 1073 (7th Cir. 2013). The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to relief and raise that possibility above the speculative level. Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007).

In addition, defendant moves to dismiss Count V under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Rule 12(b)(1) motions to dismiss are premised as either facial or factual attacks on jurisdiction. Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443-44 (7th Cir. 2009). In the instant case, defendant disputes the factual basis underlying plaintiffs' assertion of subject matter jurisdiction. Specifically, it contends that in Count V, plaintiffs seek to invalidate a state court judgment in violation of the Rooker–Feldman doctrine. Under that doctrine, federal courts other than the United States Supreme Court lack jurisdiction to review state court judgments unless expressly authorized by Congress. See

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005). In assessing a factual challenge to jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Apex Digital, 572 F.3d at 443–44 (internal quotation marks and citations omitted).

The court will apply Illinois law to plaintiffs' state law claims, the same law the parties applied. Citadel Group Ltd. v. Washington Regional Med. Ctr., 692 F.3d 580, 587 (7th Cir. 2012).

## DISCUSSION

**A.  Good Faith and Fair Dealing (Count II)**

Plaintiffs contend that defendant breached its duty of good faith and fair dealing owed them under the note, mortgage, and Trial Period Plan by failing to: (1) evaluate them for alternatives to foreclosure; (2) properly process their request for a HAMP modification; and (3) grant them a HAMP modification. But the duty of good faith and fair dealing is not an independent cause of action. Zeidler v. A&W Restaurants, Inc., 301 F.3d 572, 575 (7th Cir. 2002). Rather, it is a tool to interpret the intent of parties to a contract. Baginski v. JP Morgan Chase Bank N.A., No. 11 C 6999, 2012 WL 5989295, at *4 (N.D. Ill. Nov. 29, 2012) (dismissing good faith and fair dealing claim that was based on lender's failure to offer a permanent loan modification under HAMP). Because good faith and fair dealing is not an independent cause of action, Count II is dismissed for failure to state a claim.

**B.  Promissory Estoppel (Count III)**

Plaintiffs allege defendant promised in the Trial Period Plan that it would offer them a permanent HAMP modification if they signed the Trial Period Plan and made their monthly payments. They now seek to enforce the promise of a permanent modification under the doctrine of promissory estoppel. To establish a claim based on promissory estoppel under Illinois law, a plaintiff must show that: (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and foreseeable by defendant; and (4) plaintiff relied on the promise to its detriment. Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 906 N.E.2d 520, 523-24 (Ill. 2009). Reliance must be reasonable and justifiable. Id. at 528.

As explained in the July 25, 2012, order dismissing Count I, defendant never returned a signed copy of the Trial Period Plan. Because the plan expressly stated that it would not take effect unless signed by defendant, plaintiffs could not have reasonably relied on any of the promises in it. See Brady v. Chase Home Finance, LLC, No. 11 C 838, 2012 WL 1900606, at *9 (W.D. Mich. May 24, 2012) ("any reliance on Chase's promises of a loan modification would have been unreasonable, because the TPP expressly stated that Chase had to send [the plaintiff] a signed copy of the TPP, which [the plaintiff] concedes never occurred.").

Plaintiffs have cited cases in which a borrower plausibly alleged a claim of promissory estoppel against its lender. However, those cases are distinguishable because the plaintiffs in those cases also plausibly alleged that their lender agreed to the terms of the Trial Period Plan, and therefore those plaintiffs might have reasonably relied on promises in the plans. See Belknap v. Bank of America, N.A., No. G-12-198, 2012 WL 3150271, at *2 (S.D. Tex. Aug. 1, 2012) ("BOA promised to enter into a Modification Agreement if Plaintiffs complied with the

Trial Period Plan. Plaintiffs' reliance on that promise was certainly foreseeable to BOA . . ."); Kennedy v. Wells Fargo Bank, N.A., No. 11 C 4635, 2011 WL 4526085, at **2-3 (C.D. Cal. Sept. 28, 2011). In contrast, plaintiffs in the instant case could not have reasonably relied on promises in the Trial Period Plan because defendant never signed it. Accordingly, plaintiffs cannot establish a claim of promissory estoppel, and Count III is dismissed for failure to state a claim.

**C.** **Illinois Consumer Fraud Act (Count IV)**

Plaintiffs allege that defendant's conduct during their attempt to obtain a loan modification violated the Illinois Consumer Fraud Act. The Consumer Fraud Act protects consumers against unfair or deceptive acts or practices. 815 Ill. Comp. Stat. 505/2; Wigod, 673 F.3d at 574. To establish a claim under the Act, a plaintiff must show: (1) the defendant engaged in a deceptive or unfair act or practice; (2) the defendant intended that the plaintiff rely on the deceptive or unfair act or practice; (3) the unfair act or practice occurred during a course of conduct involving trade or commerce. See Wigod, 673 F.3d at 574.

Defendant argues that it never signed the Trial Period Plan, made no representations in it, and therefore its decision that plaintiffs were unqualified for a modification was not deceptive or unfair. It also argues that HAMP does not entitle any homeowner to a modification and, for that additional reason, its decision that plaintiffs were unqualified was not deceptive or unfair.

However, plaintiffs have alleged not only that they were refused a modification, but that defendant did not adequately evaluate them for a modification. Specifically, they allege that defendant repeatedly told them their application remained under review, and was ultimately rejected, because of unspecified problems with documents that plaintiffs had submitted.

Plaintiffs also allege that they submitted all of the required forms and documents initially, and again when defendant asked them to resubmit one of the documents. Plaintiffs allege that defendant's statements that it delayed reviewing, and ultimately rejected, their application because of insufficient documentation was untrue.

HAMP participants are required to work with borrowers to determine their eligibility for a HAMP modification by Treasury Department regulations. The regulation in effect at the time required defendant to:

> . . . work with the borrower to obtain the borrower's financial and hardship information and to determine if the HAMP is appropriate. If the servicer concludes a current borrower is in danger of imminent default, the servicer must consider an HAMP modification. . . . Servicers must use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for the HAMP, including in-person contacts at the servicer's discretion.

U.S. Dep't of Treasury, HAMP Supplemental Directive No. 09-01, at 13-14 (available at https://www.hmpadmin.com//portal/programs/docs/hamp_servicer/sd0901.pdf) (last visited March 13, 2013). A plaintiff may state a claim under the Illinois Consumer Fraud Act by alleging that a lender offended public policy by violating the standards of conduct required of HAMP participants. See Wigod, 673 F.3d at 574-75; Boyd v. U.S. Bank, N.A., 787 F. Supp. 2d 747, 753 (N.D. Ill. 2011) (plaintiff stated a claim under the Consumer Fraud Act by alleging "that Defendants were aware that he was in default and failed to even *consider* him for HAMP modification" because "[v]iolations of agency directives like these can be a hallmark of unfairness under the ICFA.") (emphasis in original).

Defendant contends that Supplemental Directive 09-01 requiring it to evaluate applications for HAMP modifications applies only to mortgages not owned by Fannie Mae or

Page 8

Freddie Mac. Because plaintiffs' mortgage is owned by Freddie Mac, defendant contends they have not plausibly alleged the violation of a HAMP directive. However, servicers of mortgages owned by Freddie Mac are also required to evaluate borrowers who request a HAMP modification. See Freddie Mac, Home Affordable Modification Program, at 2 (available at http://www.freddiemac.com/service/factsheets/pdf/ mha_modification.pdf) (last visited Mar. 13, 2013). Thus, plaintiffs have plausibly alleged that CitiMortgage violated the standard of conduct required from HAMP participants.

Defendant also contends that it did fully evaluate plaintiffs' application, and legitimately denied them a modification for failing to submit required documentation. However, plaintiffs have alleged that they submitted the documents defendant contends were missing. The court accepts this factual allegation as true for purposes of resolving the motion to dismiss. McReynolds, 694 F.3d at 879.

Plaintiffs' claim that defendant ran afoul of HAMP's requirement to adequately consider their application for a mortgage modification plausibly alleges that defendant violated the Illinois Consumer Fraud Act. Plaintiffs have also plausibly alleged they were damaged by claiming that they used their limited time and money attempting to obtain a mortgage modification from defendant rather than pursuing avenues that might have saved their home. See Wigod, 673 F.3d at 575. Accordingly, the motion to dismiss Count IV is denied.

D. **Wrongful Foreclosure (Count V)**

Finally, plaintiffs allege that defendant foreclosed on their home in violation of: (1) the requirements of the HAMP program; (2) the Illinois Consumer Fraud Act; and (3) common law.

The plaintiffs contend that their allegations state a claim of wrongful foreclosure.[3] Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that wrongful foreclosure is not an independent cause of action under Illinois law.

Plaintiffs argue that three decisions by this court recognize a cause of action of wrongful foreclosure under Illinois law. However, in the first case, Catalan v. RBC Mortgage Co., No. 05 C 6920, Dkt. 118, at 5 (N.D. Ill. Nov. 15, 2006), the court reached the opposite conclusion: "[p]laintiffs do not cite any authority in support of their contention that there is a cause of action for Wrongful Foreclosure and the Court finds none." The second decision cited by plaintiffs is actually a subsequent order from the Catalan case just discussed in which the judge to whom the case had been transferred merely acknowledged the prior ruling that wrongful foreclosure is not a cause of action. See id., 2008 WL 2741159, at *1 (N.D. Ill. July 8, 2008) ("Judge Lindberg also held that there is no cause of action for wrongful foreclosure in Illinois . . ."). The third case never addressed whether Illinois recognizes wrongful foreclosure as a cause of action and, instead, dismissed the claim because the plaintiffs did not plausibly allege an invalid foreclosure or damages. Long v. One West Bank, FSB, No. 11 C 703, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011).

In Catalan, rather than dismiss the wrongful foreclosure claim, the court viewed it as one for breach of contract because the plaintiffs premised it on an alleged breach of a note and

---

[3]The complaint also alleges that CitiMortgage foreclosed on their home in violation of its Servicer Participation Agreement with the federal government. However, as with their claim in Count II that CitiMortgage breached the duty of good faith and fair dealing, plaintiffs appear to have dropped the portion of Count V that involves the Servicer Participation Agreement. See Joint Position Paper, Dkt. 53, at 5 ("Count V is based upon CMI's wrongful foreclosure of plaintiffs' home in direct violation of HAMP's program requirements, Illinois common law, and the ICFA.").

mortgage. Catalan, No. 05 C 6920, Dkt. 118, at 5. In contrast, plaintiffs in the instant case premised their claim on alleged violations of HAMP, the Consumer Fraud Act, and unspecified common law. Because plaintiffs have not alleged that defendant breached the underlying note and mortgage, and because they have not identified authority recognizing wrongful foreclosure as a cause of action, Count V is dismissed. Because the claim is dismissed under Rule 12(b)(6), the court need not address CitiMortgage's arguments for dismissal under Rule 12(b)(1).

## CONCLUSION

For the reasons given, the remainder of defendant's motion to dismiss [14-1] is granted in part and denied in part as follows: the motion to dismiss counts II, III, and V is granted and the claims are dismissed; the motion to dismiss count IV is denied. Defendant is directed to answer the complaint as so limited on or before April 25, 2013. The parties are directed to prepare and file a joint status report using this court's form on or before May 2, 2013. A report on status is set for May 9, 2013, at 9:00 a.m.

**Enter:**     **March 26, 2013**

_____
Robert W. Gettleman
United States District Judge